## COMM'RS OF HIGHWAYS OF PRE-EMPTION
### v.
### BENJAMIN WHITSITT.

1. WATERCOURSES—DRAINAGE.—The owner of a dominant heritage may, by ditches or drains, drain his own land into the natural channel or watercourse, even if the quantity of water thrown upon the servient heritage is increased, and it is not necessary that such watercourse should have a definite channel, usually flowing in a particular direction and discharging into some other stream or body of water; but if it be surface water flowing in a regular channel, it will be a sufficient watercourse.   Peck v. Herrington, 109 Ill. 611.

2. SAME—CAN NOT CREATE NEW CHANNELS IN SERVIENT ESTATE.—The owner of the superior estate has the right to drain his lands through any regular channel on his own land, as may be required by good husbandry, which carries the water from the upper to the lower field, although the flow of water is increased, but can not drain it so as to create new channels on the servient estate.

3. SAME—DRAINING OF PONDS.—When there are natural ponds, merely the collection of surface water from rain or melting snow which fall upon the land, and there is such a descending grade that by filling up the ponds with dirt, there would be a flow of water toward and onto the servient estate, such ponds for the purpose of husbandry may be drained either by tile or other drains into any natural watercourse existing on the superior estate, and caused to flow over the servient estate, though the flow of the water may be increased thereby; though it may be that the owner of the superior estate would have no right to drain a large body of water or lake upon the land of an adjoining owner, and destroy it.

4. ROAD DRAINAGE.—The court is of opinion that the same rules are to b applied to road drainage as to farm drainage. Such damages as those comp'ained of by appellee must be regarded as having been settled in the act of granting the right of way; for the owner of lands about to grant the right of way must know that highways will be drained and improved in the manner attempted.

APPEAL from the Circuit Court of Mercer county; the Hon. JOHN J. GLENN, Judge, presiding. Opinion filed Aug. 20, 1884.

This is a bill for injunction for the purpose of restraining the appellants from digging, excavating and establishing any ditch, drain or waterway by means of which the water could be discharged from sections 2 and 3, and the north part of 10 and 11 down upon the lands of the appellee. The bill avers that appellee was the owner of E. one half of the S. E. one quarter, section 10, and S. W. one quarter, section 11, in T. 2, N., R. 2, W., in Mercer county, Ill., and had been at expense in draining and erecting a water-ram; that to the north of his land in and about the village of Pre-emption and the north part of sections 10 and 11, and south part of sections 2 and 3, there was a basin or bottom where large quantities of surface water accumulated and sought an outlet through regular and natural waterways and courses, or sank away and evaporated, and large quantities sank into the ground; that the natural outlet for such water was to the north, to Black Hawk river. That the appellants, the commissioners and overseers of highways, had determined to turn the said water from its natural course north, southwardly from the village of Pre-emption, by means of drain tile under ground, and turn it over upon and across the lands of appellee, to his lasting and irreparable injury and damage. That the said ditch will collect water under ground for about 180 rods; that on account of said ditch the volume to pass over the petitioner's land will be nearly doubled. That it would be cheaper to drain the low lands to the north. That appellee had established a watering-ram for watering stock, and such increase of flow of water would injure the workings of the water-ram and render

it useless for a portion of the year.   The answer of the commissioners admits that surface water accumulated in the highway running southwesterly from the village of Pre-emption, but denies that the water sought an outlet through regular and natural waterways and courses to the north or in a northerly direction and that it was cheaper to drain the water to the north; and avers that the natural and proper outlet for such water is in a southerly direction, but after heavy rains or snows the surface water remains in the highway so that the road during certain seasons of the year becomes almost impassable for the public use, and that the cheapest and easiest way to drain the road is southwardly along the highway leading from Pre-emption to a natural ravine which crosses the highway where the surface water naturally flows; denying that the intended drain would receive any water from sections 2, 3 and 10 of said township and only such portion of section 11 as was in the public highway and for the sole purpose of improving the highway.   That petitioner was present when they commenced the construction of the drain, and offered no objection until 80 rods of the drain had been constructed and so much of it as benefitted his farm had been completed. That the increased flow of the water would not be perceptible in amount and would not injure the water-ram.   The court upon hearing found for appellee and ordered the preliminary injunction to be made perpetual, and that appellants pay the costs.

Messrs. PARKS & PLEASANTS, for appellants; cited Angell on Watercourses, 138, § 108 L;  Angell on Highways, 241, 235, 245; High on Injunctions, 464, 473; City of St. Louis v. Gurno, 12 Mo. 415; White v. Yazoo, 27 Miss. 357; Flagg v. Wooster, 13 Gray, 603; Turner v. Dartmouth, 13 Allen, 291; Martin v. Riddle, 26 Penn. 417; Mellor v. Pilgrim, 7 Bradwell, 306.

Mr. JOHN C. PEPPER, for appellee; that the remedy to prevent the improper diversion of surface water is by injunction, cited Hicks v. Silliman, 93 Ill. 255; Herrington v. Peck, 11 Bradwell, 63.

As to the rights of the servient and dominant heritage: Nevins v. City of Peoria, 41 Ill. 502; Rudd v. Williams, 43 Ill. 385; Gillham v. Madison Co. R. R. Co., 49 Ill. 484; Gormley v. Sanford, 52 Ill. 158; T. W. & W. R. R. Co. v. Morrison, 71 Ill. 616; Johnson v. Rea, 12 Bradwell, 332; Mellor v. Pilgrim, 3 Bradwell, 476; Doud v. Guthrie, 11 Bradwell, 194; Herrington v. Peck, 11 Bradwell, 63.

LACEY J. The evidence shows that between the village of Pre-emption and the point of discharge of the tile drain, a railroad crosses the highway and drain, and that it is about eighty rods north of the mouth of the tile drain, and that the tile had been laid to a point north of the railroad before appellee made any objections or sued out the writ of injunction. That the highway at the mouth of the tile drain on section 11 is crossed by a ravine or swail running from west to east, and over which there is a culvert in the road where this natural watercourse passes under the highway. That about thirty rods west and up this ravine the appellee's water-ram is located, which is rendered useless at times when there is much water, and when it backs up this ravine from the road to the ram. The appellee guesses the flow of water in the ravine will be increased one third by the completion of the drain, and that it will damage the working of his water-ram, which he claims cost him from four to five hundred dollars. Appellee testifies that he did not object to the tile as far as it was laid, but objected to its continuance further north.

The evidence of the engineer shows that the length of the proposed tile drain from the place where it empties into the ravine and where the work of laying it commenced, to the upper end, is twenty-eight hundred feet; from the point of commencement north to the point of the proposed ending of it there was an up grade twenty and forty-five one hundredths feet from the surface of the ground at commencement to the surface of the ground at the upper end, and in no place was the ground higher than at the upper end. There was a regular descending grade from the upper to the lower end with some

intervening higher land along the line in some places than in others, but if the surface of the land had all been filled up level, there would have been a regular flow of water all the way from the upper to the lower end of the drain, so that under the rule in Peck v. Herrington, 109 Ill. 611, the appellee's land would be the servient estate to the land covered by the highway north of appellee's. The tile was simply laid and to be laid to absorb and carry off the surface water lying in ponds along the line of the road and on the right of way and would only take off the water underground, and as the water was discharged into a natural watercourse running across the land of appellee and discharged on the right of way of the highway into such watercourse, the appellants had a right to so discharge it, and in law there could be no damage resulting to appellee, no matter how much actual damages were suffered by him by means of an increased flow of water. Peck v. Herrington, *supra*. But the evidence shows that the damages were insignificant at best, and the existence of any was a mere matter of speculation, even if a right of recovery had existed. We think that the preponderance of the evidence shows that the damages would have been merely nominal in case the drain had been completed as projected, and that no irreparable loss would have been sustained.

By Peck v. Herrington these rules appear to be established: 1. That the owner of a dominant heritage may, by ditches or drains, drain his own land into the natural channel or watercourse, even if the quantity of water thrown upon the servient heritage is increased; and that it is not necessary that such watercourse should have a definite channel usually flowing in a particular direction and discharging into some other stream or body of water; but if it be surface water flowing in a regular channel it will be a sufficient watercourse. 2. The owner of the superior estate has the right to drain his lands through any regular channel on his own land, as may be required by good husbandry, which carries the water from the upper to the lower field, although the flow of water is increased, but can not drain it so as to create new channels on the servient estate. 3. Where there are natural ponds, merely the collection of

surface water from rain or melting snow which fall upon the land, and there is such a descending grade that by filling up the ponds with dirt there would be a flow of water toward and onto the servient estate, such ponds, for the purpose of husbandry, may be drained, either by tile or other drains, into any natural watercourse existing on the superior estate and caused to flow over the servient estate, though the flow of the water may be increased thereby; though it may be that the owner of the superior estate would have no right to drain a large body of water or lake upon the land of an adjoining owner and destroy it. Just how large the lake or body of water must be is not clearly defined.

If the same rule is to be applied to road drainage as to farm drainage we see no reason under these rules why the appellants did not have a right to drain a road in the manner proposed. We can see no reason why the same rule should not govern as well in the one case as the other. Certainly, road drainage is fully as important as farm drainage, and those rules as to such drainage have been established by the courts out of considerations of public policy for the public good. Such damages as those complained of by the appellee must be regarded as having been settled in the act of granting the right of way. For the owner of lands about to grant the right of way must know that highways will be drained and improved in the manner this was attempted.

Under the more liberal view of the law in regard to drainage in the furtherance of the interest of good agriculture, as taken by the Supreme Court in the Peck-Herrington case, than was understood by many to have been held in the Hicks-Silliman case, 93 Ill. 255, and the Turney-Smith case, 86 Ill. 391, and other cases by analogous reasoning, applying the same principles to the facts in this case, we think that the appellee had no grounds for complaint and no basis for his prayer for injunction.

The decree of the court below is reversed and the cause remanded.

                                        Reversed and remanded.