## MICHAEL CROHEN

### v.

## WILLIAM D. EWERS AND HENRY SNYDER.

*Highways—Action to Recover for Discharging Water on Plaintiff's
Land—Superior and Servient Estate—Damage—Instructions—Costs of
Amended Abstract—Evidence.*

1. In any action brought against highway commissioners, in their indi-
vidual capacities, to recover damages alleged to have been sustained by
plaintiff through the drainage of water upon his land, it is *held:* That the
evidence failed to show that plaintiff had suffered any appreciable damage
from the acts complained of; that plaintiff's land was servient to that from
which the water was drained, and that in a state of nature the water
flowed in the same direction as it did after the acts complained of were
committed.

2. It was competent in the case presented, for qualified witnesses to
give their opinion as to whether the plaintiff's land was damaged by the
acts complained of.

[Opinion filed December 8, 1890.]

APPEAL from the Circuit Court of Whiteside County; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. J. D. ANDREWS, for appellant.

The owner of high land has no right to open or remove natural barriers, and let onto lower land water which would not otherwise naturally flow in that direction. Dayton v. Drainage Com'rs, 128 Ill. 277.

An action lies for flooding the lands of another, even in the least degree, and without any actual prejudice, the law implies damages. Sedgwick on Meas. Dam., Sec. 52; Pastorious v. Fisher, 1 Rawl. 27; Cited 15 Ill. 531.

Where a water-course has been diverted in such a way as to cause water to flow upon the land in a place where it otherwise would not have gone, an action will lie; and in such case it is not necessary to prove that the plaintiff has sustained specific damages, or actual, perceptible injury. Sedgwick on Damages, 137; Waterman on Trespass, Sec. 12; Plumley v. Dawson, 1 Gilm. 552; McConnel v. Kibbe, 33 Ill. 178.

In such a case it would be no defense to prove that the land was actually benefited. Druly v. Adams, 102 Ill. 201; Pfeiffer v. Grossman, 15 Ill. 53; 1 Waterman on Trespass, Sec. 12.

The rule that courts will not allow new trials to recover nominal damages has no application to such cases. Plumley v. Dawson, 1 Gilm. 552; Druly v. Adams, 102 Ill. 201.

One's right of property is infringed by any unlawful flowage of his land. The omission to show actual damages, and the inference that none have been sustained, does not render the case trivial, and the maxim *de minimis non curat lex* has no application. 1 Sutherland on Damages, pp. 12 and 13.

The flooding of land is a direct and physical injury. Nevins v. Peoria, 41 Ill. 502; Rigney v. Chicago, 102 Ill. 72.

No authority given by charter or statute can deprive the plaintiff of his right to recover for such invasion of his property. Rigney v. Chicago, 102 Ill. 72.

No matter how strictly the legislative authority may have been followed, if the plaintiff's land has been overflowed an action will lie. T. W. & W. Ry. v. Morrison, 71 Ill. 616; Rigney v. Chicago, 102 Ill. 74.

If highway commissioners divert water from its natural course, whereby it is caused to flow upon the land of a private individual, without providing compensation, the tort is that of the men in their individual capacity. Tearney v. Smith, 86 Ill. 391; Cooney v. Town of Hartland, 95 Ill. 517.

The original condemnation proceedings undoubtedly include compensation for injuries which it was then shown he would suffer, but are no bar for an action for an alteration in the method of constructing a highway, or for diverting the water-course. W., St. L. & P. Ry. v. McDougal, 118 Ill. 229–238; Tearney v. Smith, 86 Ill. 395.

Proceedings under the eminent domain act are a concurrent remedy with an action at law. " The action for damages may be regarded as one kind of condemnation proceeding." Per Sheldon J. C. E. & I. Ry. v. Loeb, 118 Ill. 214; O. & M. Ry. v. Wachter, 123 Ill. 445.

The court erred in allowing parol evidence of the necessity of the ditch, and that the highway commissioners acted as an official body in determining to dig the ditches. Chaplain v. Highway Com'rs, 129 Ill. 651.

The court erred in allowing witnesses to swear that the land of the plaintiff had not been damaged. It was the province of the witnesses to furnish the data, and of the jury to determine therefrom the amount of damages. 1 Sutherland on Damages, 794; Van Dusen v. Young, 29 N. Y. 9; C., etc., R. R. v. Ball, 5 Ohio State, 568.

Mr. WILLIAM H. ALLEN, for appellees.

Where the filling up of ponds on a dominant estate would have the effect of conducting water on the dominant estate to a natural passage for surface and other water, on the dominant estate, and extending on to the servient estate, the same effect may be rightfully attained by a ditch or ditches on the

dominant estate, made to such natural passage for water, though the flow in the servient estate may be increased thereby. Peck v. Harrington, 109 Ill. 611; Commissioners of Highways v. Whitsitt, 15 Ill. App. 318.

The rule applied to farm drainage is also applied to road drainage. Commissioners of Highways v. Whitsitt, 15 Ill. App. 318; Palmer v. O'Donnell, 15 Ill. App. 324.

The owner of the superior estate has the right to drain his lands through any regular channel on his own lands, as may be required by good husbandry, which carries the water from the upper to the lower field, though the flow may be increased, so he makes no new channels on the servient estate; and may by drains or ditches drain his own land into the natural channel or water-course; and it is not necessary that such channel or water-course should have a definite channel usually flowing in a particular direction and discharging into some stream or body of water, but if it be surface water flowing in a regular channel it will be sufficient. Commissioners of Highways v. Whitsitt, 15 Ill. App. 322.

" Owners of land may drain the same in the general course of natural drainage, by constructing open or covered drains, discharging the same into any natural water-course, or into any natural depression, whereby the water will be carried into some natural water-course or into some drain on the public highway, with the consent of the commissioners thereto, and when such drainage is wholly upon the owner's land he shall not be liable in damages therefor to any person." Laws of the State of Illinois, ·34th General Assembly, A. D. 1885, page 79, section 4.

" That the ditches or drains heretofore made by any county, or by any county contracting with any incorporated company, to drain the swamp and overflowed lands, donated to such county by the State, are hereby declared public ditches or drains." Session Laws, Ill., Thirty-third General Assembly, A. D. 1883, page 81, section 1.

It is a well settled rule in this State that a new trial will not be granted to enable a party merely to recover vindictive or nominal damages. Comstock v. Brosseau, 65 Ill. 39;

McKee v. Ingalls, 4 Scam. 33; Johnson v. Weedman, 4 Scam. 497.

When the verdict is clearly right, on appeal the same will not be disturbed. Griffith v. Sutherland, 53 Ill. 195; French v. Lowry, 19 Ill. 158; Sullivan v. Dollins, 13 Ill. 85; Hill v. Ward, 2 Gilm. 285.

A court will not grant a new trial, or reverse a judgment on appeal, because of admission of improper, or the rejection of proper testimony, or for want of the proper direction or for the misdirection of the judge who tried the case, provided the court can see from the whole record that justice has been done. Greenup v. Stoker, 3 Gilm. 202; Taylor v. Danville, O. & O. R. R. Co., 10 Ill. App. 311; DeLand v. Dixon National Bank, 14 Ill. App. 219.

LACEY, J. This was an action in case commenced by appellant against appellees to recover damages for discharging water on the land of the former by means of certain drains or ditches alleged to have been dug by appellees. The declaration shows that appellees, who were commissioners of highways, but sued herein in their individual capacity, dug certain ditches on the public highway opposite and along the northeast quarter of section 20, T. 20, R. 4, and thereby discharged water upon appellant's land. To this declaration the appellees pleaded not guilty, and specially that they were commissioners of highways, and to repair the highways dug the ditches all the way in the natural course of the flow of water from the north to the south from the higher to the lower ground, to connect with the county ditch and to carry water, and the said ditches did carry water to the county ditch, which said county ditch was a public ditch, and that said ditch is in the general course of natural drainage, and only drained the said highway in the general course and direction of natural drainage, and only water that without said ditch would go there.

The cause was tried by a jury and resulted in a verdict of not guilty for appellees and the court rendered judgment for costs against the appellant. From such judgment this appeal

is taken. The situation of the respective lands was about as follows: The appellant owned the forty-acre tract of land mentioned in the declaration. One Florence owned another forty-acre tract just north, and Mr. Ewers, one of the appellees, owned 120 acres just east of appellant's and Florence's tracts, in an L shape, the long way being opposite the tract of appellants.

The public highway runs from the north to the south, on the east line of Florence's and appellant's land, and on the west line of appellee Ewers', extending south. It was the appellees' acts in improving this road that are complained of, that is, in digging certain ditches along the margin of the thrown up road on either side, and thereby conducting water from the north from appellee Ewers' land that it is claimed would not otherwise come onto appellant's land. It appears from the evidence that the general levels of the respective tracts of land were that both Ewers' and Florence's land were higher than that of appellant, and water in a state of nature flowed from Ewers' land on the east and from Florence's land on the north over and across appellant's land in a southwesterly direction, making its way toward Meredoced creek, some five or six miles distant to the west. The land of appellant Florence and Ewers was flat and was located in the course of the general flow of water from the north and east and full of little depressions or sloughs, mostly extending easterly and westerly. Sometimes when Rock creek, which is about one and one-half miles east, overflowed its banks, water flowed nearly all over these lands from the east to the west. In fact, the land of appellant was the servient estate as to the water flowing from Florence's and Ewers' lands, and the latter the dominant or superior estates. The ground through which the road ran through these lands was flat and wet so that the road had to be thrown up and bridges for the passage-way of water opposite the various sloughs put in.

There was an old county ditch crossing the road extending across Ewers' land, extending from east to west across appellant's land and running on eastwardly to the Meredoced creek spoken of, and crossing appellant's land on his east line

about midway, and coming out on his west line not far from the southwest corner. Opposite this ditch on the road, the highway commissioners had built a bridge twenty feet wide for the passage of water into the ditch. Just north of this about ten rods, appellees, as highway commissioners, constructed another bridge about ten feet wide; this was opposite the slough or depression extending from Ewers' land across the highway and onto and across appellant's land where water was wont to flow from Ewers' land onto and across appellant's land and into the county ditch near the southwest corner thereof. Just north of this bridge there was another highway bridge across, a little north of appellant's land, to bridge another slough extending from appellee Ewers' land to and across Florence's land, where the water gathered and flowed from east to west from Ewers' land onto and across Florence's land and entering appellant's land on his north line about sixty-eight rods west from the road and then running southwesterly to his southwest corner into the old county ditch and thence off. The three sloughs, the one opposite the county ditch bridge, the one at the first bridge north of it and the one at the Florence bridge, so called, had a more or less imperfect connection east on the lands of Ewers, in which the water ran from the northmost one to the southernmost one and then into the county ditch. This connection probably did not perfectly drain the two northern sloughs to the south. There were on the line of the road between these sloughs, little swells of land of some fourteen inches or so at the highest point, that prevented the water running from the one to the other from the north to the south.

For some years prior to the time of the work complained of, the road along the course of these lands had been graded up by throwing the dirt from the margin of the road on either side, making a bank in the center of the road for travel and a ditch on either side for water, except certain benches across the ditch which were not taken out; probably two of them on either side below Florence's land and above the second bridge, and some portions of the ditch between the second bridge and

the county ditch, were also not taken out. In improving the road the appellees built the second bridge and dug a passage way for water under it, as a great preponderance of the evidence shows, about even with the original surface of the ground, and also took out the benches in the ditch and cleaned out and deepened the ditches from the second bridge to the county ditch, so that the water could have a freer passage. Now, the cleaning out of the ditches and removing the benches of earth in them, are the acts that are complained of as illegal and from which the damages for which suit is brought resulted, as is alleged. The putting in the bridge and the digging of the passage way under it was certainly in itself not wrongful, as at that point there was a regular depression through which water was accustomed to pass from the east to the west on appellant's land. It appears also that appellant himself, when he was one of the commissioners of highways, excavated these ditches from the Florence bridge south to a point below his line, but, as he claims, left benches to hold back the water. Now, the commissioners of highways, the appellees, found that these ditches were conducting the water down and overflowing the road bed, and in order to improve the highway, they cleaned out the ditches all the way down to the county ditch, so the water could pass out through such ditch. This we think they had a right unquestionably to do, if in so doing they did not injure appellant's land, or if they conducted such water into the county ditch or into some outlet or depression on appellant's land over which the water from the appellee Ewers' estate had a right to pass. It does not appear from the evidence very satisfactorily, how much of a slough or depression existed on and over appellant's land southwesterly to the county ditch from the point where the second bridge was built, but it shows that on appellee Ewers' land opposite, there was a well-marked slough and depression, out of which much water flowed at times in a state of nature and emptied out at that point on appellant's land, and that it found its way across his land very readily to the county ditch.

There was at times such a flow that it even washed away

the road embankment at that point, and there was at that point across appellant's land a fall from there to the county ditch of over four feet to the mile. We are inclined to think that the evidence was sufficient to sustain the claim that this was a natural depression into which appellee Ewers, in his own right as well as in his capacity as commissioner of highways, might conduct the water from the superior to the servient estate, even if the flow of the water in such depression was thereby increased; and he might also conduct it into the county ditch. But the evidence, as we think, more than warranted the jury in finding by their verdict that the flow was not enough, if any, increased to be of any damage to appellant. In furtherance of good husbandry, and the public benefits to the public from the improvements of the highways, the law compels the owner of the servient estate to suffer all such inappreciable damages as these. Neither the appellees nor the public will acquire a new easement for the flow of water over the appellant's land by the construction and maintenance of the ditches in the present form. The appellee Ewers and the public had that before; and as the flow of water over his land has not been increased so as to damage him in any degree, he has no cause of action. The rule of law laid down in Peck v. Harrington, 109 Ill. 611, Converse v. Whitsitt, 15 Ill. App. 318, and Palmer v. O'Donnell, 15 Ill. App. 324, we think is applicable here and will govern in this case.

It was not error to allow witnesses to testify that in their opinion the opening of the ditches along the highway caused appellant no damages. The question of damages and the amount thereof, if any, was a matter about which men acquainted with such matters could give their opinion. If the appellant wanted to inquire into the basis of that opinion he could do so by cross-examination. The appellees' instructions to the effect that unless the jury believe from the evidence that appellant was damaged by the wrongful acts of appellees he could not recover, were not erroneous. There was no pretense that if the water went over the appellant's land in increased quantities, but that appellant was damaged, and if the appellees' acts were illegal and tortious, that the former should recover.

The jury was fully instructed on this point on appellant's motion, and if he was simply suing to recover nominal damages and he had desired to have the law laid down more clearly on the point for such recovery, he should have asked instructions directed to that question particularly. We think substantial justice has been done and that the verdict was in accordance with the evidence.

Appellees have made out an amended abstract in the case, and move the court to rule that appellant pay to the appellees the cost of such abstract. We are of the opinion that appellant's abstract was not fair to appellees and did not contain the substance of all their evidence in many material points. The judgment of the court below is therefore affirmed and the appellant ordered to pay to appellees the costs of the additional abstract.                        *Judgment affirmed.*